**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00692-001-TUC-RM (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| Francisco Munoz Lutz, | |
| Defendant. | |

On July 19, 2019, Magistrate Judge Bruce G. Macdonald issued a Report and Recommendation ("R&R") (Doc. 30), recommending that this Court grant Defendant Francisco Munoz Lutz's Motion to Dismiss (Doc. 20) and dismiss the indictment in the above-captioned case with prejudice. The Government filed an Objection. (Doc. 31.) The Court then ordered supplemental briefing (Doc. 34; *see also* Docs. 35, 36) and held oral argument (Doc. 42). For the following reasons, the Government's Objection will be overruled, Judge Macdonald's R&R will be accepted and adopted, and Defendant's Motion to Dismiss will be granted.

**I.    Background**

Defendant was arrested on February 22, 2019. At a detention hearing held on February 27, 2019, Magistrate Judge Jacqueline M. Rateau ordered Defendant released on conditions. (Docs. 4, 5.) A preliminary hearing was set for March 4, 2019 (Doc. 2), but Defendant did not appear because he was being held in the custody of U.S. Immigration and Customs Enforcement ("ICE") (Doc. 9). The preliminary hearing was continued to

March 6, 2019 (Doc. 9), but again Defendant did not appear because he was being held in ICE custody (Doc. 10). The preliminary hearing was again continued, this time to March 11, 2019 (Doc. 10), on which date Defendant appeared via writ but the Government was not prepared to move forward (Doc. 12).

Defendant was indicted on March 13, 2019 (Doc. 14) and arraigned on March 25, 2019 (Doc. 17). He is charged with one count of conspiracy to possess with intent to distribute marijuana, one count of possession with intent to distribute marijuana, one count of conspiracy to import marijuana, and one count of importation of marijuana. (Doc. 14.)

On April 23, 2019, Defendant filed a Motion to Dismiss (Doc. 20), alleging that his ICE detention violated his rights under the Bail Reform Act and the Eighth Amendment, and that dismissal with prejudice was an appropriate remedy. After Defendant's Motion was fully briefed (Docs. 22, 23), Judge Macdonald heard oral argument (Doc. 26). Following oral argument, while the Motion was under advisement by Judge Macdonald, Defendant filed a Factual Supplement (Doc. 29) advising that Defendant had been removed from the United States to Mexico, and that defense counsel had been unable to make contact with him following his removal. On July 19, 2019, Judge Macdonald issued the pending R&R (Doc. 30), recommending that this Court grant Defendant's Motion to Dismiss.

**II.     Standard of Review**

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by a magistrate judge. 28 U.S.C. § 636(b)(1). A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." *Id.*[1]

**III.    Discussion**

Judge Macdonald's R&R finds that Defendant's removal from the United States violates his Sixth Amendment right to counsel, that the constitutional violation is solely

---

[1] The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition.

- 2 -

due to the actions of the Government, and that dismissal with prejudice is appropriate. (Doc. 30 at 3-4.) The Government filed an Objection, arguing that Judge Macdonald failed to address the issues and record placed before him by the parties in their pleadings and oral arguments, instead *sua sponte* identifying a Sixth Amendment issue and making findings unsupported by the record. (Doc. 31 at 6.) The Government argued that this Court should reject the R&R and deny Defendant's Motion to Dismiss as moot. (*Id.* at 6-8.)

This Court rejected the Government's argument that Defendant's Motion to Dismiss should be denied as moot, and ordered supplemental briefing addressing whether Defendant's removal from the United States requires dismissal of the indictment with prejudice. (Doc. 34.) Defendant's Supplemental Brief argues that the Government is asking this Court to protect its interest in prosecution when that interest was undermined by the Government's own constituent agencies. (Doc. 35 at 4.) Defendant complains that, notwithstanding *United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015),[2] the Government in this district has routinely sought the pretrial detention of non-citizen defendants and then routinely disregarded release orders with respect to such defendants. (*Id.* at 2-4.) Defendant argues that dismissal with prejudice is appropriate to deter the Government's conduct and promote respect for the law. (*Id.* at 4-6.)

The Government's Supplemental Brief argues that Defendant's Motion to Dismiss relies solely on *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (D. Or. 2012) and *United States v. Laurean-Lozoya*, No. CR-18-0700-TUC-RM (BGM), 2018 WL 5928169 (D. Ariz. Oct. 23, 2018), *adopted by* 2018 WL 5924181 (Nov. 13, 2018), and that both of those cases have been called in doubt by *United States v. Veloz-Alonso*, 910 F.3d 266 (6th Cir. 2018), *United States v. Vasquez-Benitez*, 919 F.3d 546 (D.C. Cir. 2019), and *United States v. Nunez*, 928 F.3d 240 (3d Cir. 2019). (Doc. 36 at 3-4.) The Government further argues that *Trujllo-Alvarez* does not support Defendant's Motion. (*Id.* at 4.) The Government continues to argue that the factual findings of Judge Macdonald's R&R are

---

[2] Defendant's Supplemental Brief erroneously cites *United States v. Santos-Flores*, 650 F.2d 1149 (9th Cir. 2015); it appears that Defendant intended to cite *United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015).

unsupported by the record, and further argues that the R&R misapplies the applicable law by conflating the entire "Executive Branch" with "the investigatory or prosecutorial process" contemplated in *United States v. Barrera-Moreno*, 951 F.2d 1089, 1092 (9th Cir. 1991). (*Id.* at 5-7.) Finally, the Government argues that dismissal with prejudice is permitted only in cases of flagrant prosecutorial misconduct, and here prosecutorial misconduct was not alleged or found. (*Id.* at 8.)

This case involves a tension between lawful release orders under the Bail Reform Act ("BRA") and actions taken by ICE under the Immigration and Nationality Act ("INA"). That tension results not from statutory language but from the failure of "two Article II agencies" to "coordinate their respective efforts." *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111-12 (D. Minn. July 23, 2009).

Under the BRA, any person charged with a criminal offense shall be released pending trial—on personal recognizance, bond, or conditions—unless "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1); *see also* 18 U.S.C. § 3142(a)-(c). "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community," the BRA directs the judicial officer to consider a number of factors involving the offense and the defendant. *See* 18 U.S.C. § 3142(g). Immigration status is not among those factors. *Santos-Flores*, 794 F.3d at 1090. Because "the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition," a district court cannot rely on the existence of an ICE detainer and the probability of a defendant's immigration detention and removal to deny bail under the BRA. *Id.* at 1091-92.

"When an alien who has no lawful right to be in the United States is found in this country, ICE may remove and deport that person under the authority of the INA." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1169. In the alternative, "ICE may choose to postpone the removal and deportation of the person while the U.S. Attorney's Office brings a criminal

prosecution." *Id.* If the Government chooses to prioritize criminal prosecution over immediate removal, it may not then "use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act." *Santos-Flores*, 794 F.3d at 1091.

Under the INA, an alien must be removed within 90 days of being ordered removed and must be detained during the 90-day removal period; however, "[i]f the alien is detained or confined (except under an immigration process)," the removal period does not begin until "the date the alien is released from detention or confinement." 8 U.S.C. § 1231(a)(1)(B)(iii); *see also* 8 U.S.C. § 1231(a)(1)(A), (a)(2). Courts have interpreted the phrase "released from detention or confinement" to mean "release from incarceration pursuant to a final judgment of conviction," rather than release subject to conditions of pretrial supervision, since "a person who has been released subject to conditions of pretrial supervision is still 'confined' because they are subject to restraints not shared by the public generally that significantly confine and restrain their freedom." *Trujillo-Alvarez*, 900 F. Supp. 2d at 1174-75; *see also United States v. Resendiz-Guevara*, 145 F. Supp. 3d 1128, 1135 (M.D. Fla. Nov. 12, 2015) (same). Although the Ninth Circuit has not definitely ruled on the issue of when the 90-day removal period begins to run, *see Santos-Flores*, 794 F.3d at 1091 n.3, it appeared to endorse the view of *Trujillo-Alvarez* in an unpublished order. *United States v. Castro-Inzunza*, No. 12-30205, 2012 WL 6622075, at *1 (9th Cir. July 23, 2012).

In *Veloz-Alonso* and *Vasquez-Benitez*, the Sixth Circuit and D.C. Circuit, respectively, reversed district court orders prohibiting ICE from civilly detaining defendants who had been released under the BRA. *Veloz-Alonso*, 910 F.3d at 267; *Vasquez-Benitez*, 919 F.3d at 548. In *Vasquez-Benitez*, the court found that the BRA and INA serve different purposes: individuals are detained under the BRA to ensure their presence at trial and the safety of the community, whereas individuals are detained under the INA to facilitate their removal from the country. 919 F.3d at 553. "ICE's authority to facilitate an illegal alien's removal from the country does not disappear merely because the

U.S. Marshal cannot detain him under the BRA pending his criminal trial." *Id.* The Third Circuit echoed this conclusion in *Nunez*, finding that the INA permits the detention of an alien for the purpose of removing her "but not for the sole purpose of ensuring her presence for criminal prosecution." 928 F.3d at 245. *Trujillo-Alvarez* likewise recognized—consistent with *Vasquez-Benitez* and *Nunez*—that ICE has the authority to detain a defendant for the purpose of removing him but that "neither ICE nor any other part of the Executive Branch may . . . hold someone in detention for the purpose of securing his appearance at a criminal trial without satisfying the requirements of the BRA." *Id.* at 1176, 1178-79.

In *Veloz-Alonso*, the Sixth Circuit held that "ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination." 910 F.3d at 270. While the Court agrees with the Government that this holding is in tension with *Trujillo-Alvarez*, it is also in tension with *Santos-Flores*, which held that ICE's power of removal cannot be used to trump a defendant's rights under the BRA. 794 F.3d at 1091. The Sixth's Circuit's finding that ICE "is under mandatory instruction to detain and deport an alien illegally reentering after a final removal order," *Veloz-Alonso*, 910 F.3d at 269, is also at odds with the finding in *Santos-Flores* that "[r]einstatement of a prior order of removal is neither automatic nor obligatory," and that ICE may "exercise its judgment that the public interest in criminally prosecuting an alien is greater than the public interest in swiftly removing him," *Santos-Flores*, 794 F.3d at 1091. *Santos-Flores*—and not *Veloz-Alonso*—is binding precedent on this Court.

In addition to being at odds with binding Ninth Circuit precedent, the reasoning of *Veloz-Alonso* is unpersuasive. In finding that ICE is under mandatory instruction to detain and deport defendants illegally reentering after a final removal order, *Veloz-Alonso* failed to analyze when the 90-day removal and mandatory detention period of 8 U.S.C. § 1231 begins to run. This Court agrees with the determination of other courts—including *Trujillo-Alvarez*—that the 90-day removal period begins to run when a defendant is released from incarceration pursuant to a final judgment of conviction, rather than when a

defendant is released on conditions under the BRA. Accordingly, ICE is not under mandatory instruction to detain and deport defendants placed on pretrial release under the BRA.

Just as it failed to address the issue of when mandatory detention during the 90-day removal period of 8 U.S.C. § 1231 begins to run, *Veloz-Alonso* also failed to address the impact of 8 C.F.R. § 215.2(a) and 215.3(g), which together prioritize criminal prosecution over the immediate departure of alien defendants. Pursuant to 8 C.F.R. § 215.2(a), department-control officers are directed to temporarily prevent the departure of an alien from the United States if that "departure would be prejudicial to the interests of the United States." Pursuant to 8 C.F.R. § 215.3(g), an alien's departure is prejudicial to the interests of the United States if the alien "is needed in the United States as a witness in, or as a party to, any criminal case under investigation or pending in a court in the United States," although the departure may be permitted "with the consent of the appropriate prosecuting authority." Although the Ninth Circuit has not determined the impact of these regulations, *see Santos-Flores*, 794 F.3d at 1091 n.3, this Court agrees with the courts that have required the Government to show "why it lacked the ability to prevent Defendant's departure through a stay or departure control" in light of 8 C.F.R. § 215.2(a) and 215.3(g). *Resendiz-Guevara*, 145 F. Supp. 3d at 1136. Here, the prosecution has offered no explanation as to why it did not attempt to prevent ICE's removal of Defendant.

Even if the reasoning of *Veloz-Alonso* were persuasive, the Sixth Circuit found in that case that "there is no statutory conflict" between the BRA and the INA only "[t]o the extent that ICE may fulfill its statutory mandates without impairing" the BRA's purpose of "ensur[ing] the appearance of criminal defendants at judicial proceedings." 910 F.3d at 270. The Government has failed to show how ICE's detention and removal of Defendant in this case has not impaired the BRA's purpose of ensuring Defendant's appearance at judicial proceedings. Indeed, the record reflects that ICE's detention of Defendant caused Defendant to miss two court dates scheduled as preliminary hearings. (Docs. 9, 10.) Defendant's deportation caused him to miss the oral argument held before this Court on

October 28, 2019. (Doc. 42.)

The Court is concerned that the delay caused by ICE's detention of Defendant and the Government's lack of preparedness at the hearing held on March 11, 2019 resulted in a violation of Fed. R. Crim. P. 5.1, which requires that a preliminary hearing be held within 14 days after a defendant's initial appearance if the defendant is in custody. Since Defendant remained in custody despite Judge Rateau's release order, the deadline for holding a preliminary hearing expired on March 11, 2019. Although a preliminary hearing need not be held when a defendant is indicted, *see* Fed. R. Crim. P. 5.1(a)(2), in this case, Defendant was not indicted until March 13, 2019—after the expiration of the deadline for holding a preliminary hearing.

The Court is also concerned that Defendant was held for an extended period in the custody of the U.S. Marshal after issuance of Judge Rateau's release order under the BRA. Defendant's Motion to Dismiss (Doc. 20) indicates that, from at least March 11, 2019 until approximately March 25, 2019, Defendant was held in the custody of the U.S. Marshal, rather than ICE custody, notwithstanding Judge Rateau's release order.

Most concerning, ICE's removal of Defendant from this country is interfering with Defendant's Sixth Amendment right to "consult with counsel, to review the evidence against him[,] and to prepare a defense to the charge." *Resendiz-Guevara*, 145 F. Supp. 3d at 1138. While the Government suggests that Defendant may consult with his attorney telephonically or that his attorney may travel to Mexico for in-person consultations, it is not the prerogative of the prosecution or ICE to dictate how Defendant is able to consult with his attorney.

ICE initially chose to prioritize Defendant's criminal prosecution over his immediate removal but, faced with a lawful release order under the BRA, it reversed course and decided to instead prioritize his immediate removal. "The fact that ICE will not agree or cannot be trusted to delay deportation—that separate agencies within the Executive Branch do not communicate and cooperate—cannot serve to deprive a defendant of his rights" under the Constitution. *United States v. Argueta-Espinoza*, No. 4:18MJ3133, 2018

WL 4492226, at *2 (D. Neb. Sept. 19, 2018). By deporting defendants regardless of the resulting prejudice to criminal prosecutions, ICE displays an "apparent willingness to prejudice the interests of the people of the United States and the constitutional rights of the accused, with resulting waste of DOJ, court, and defense resources." *United States v. Boutin*, 269 F. Supp. 3d 24, 28-29 (E.D.N.Y. Dec. 20, 2017). The problem in this case lies not with any action attributable to Defendant but instead with the fact "that two Article II agencies will not coordinate their respective efforts." *Barrera-Omana*, 638 F. Supp. 2d at 1111-12. "It is not appropriate for an Article III judge to resolve Executive Branch turf battles" and "run interference for the prosecuting arm of the government." *Id.* at 1112. If ICE is unwilling to exercise its authority to delay a deportation when a criminal prosecution is pending, "'it is a matter for the Executive Branch to resolve internally.'" *Boutin*, 269 F. Supp. 3d at 29 (quoting *United States v. Ailon-Ailon*, 875 F.3d 1334, 1339 (10th Cir. 2017) (per curiam)).

If ICE jeopardizes a district court's ability to try a defendant by placing the defendant in immigration detention or removing him, "the district court may craft an appropriate remedy." *Santos-Flores*, 794 F.3d at 1091. A district court may dismiss an indictment under its supervisory powers "to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct." *Barrera-Moreno*, 951 F.2d at 1091. Here, the prosecution's failure to coordinate with ICE has resulted in the violation of Defendant's rights. Dismissal of the indictment is appropriate under this Court's supervisory powers to remedy the ongoing violation of Defendant's Sixth Amendment rights. In order to promote respect for the BRA and to deter ICE and the U.S. Attorney's Office from continuing to engage in turf battles in lieu of inter-agency cooperation, the Court agrees with Judge Macdonald that dismissal with prejudice is appropriate.

Accordingly,

**IT IS ORDERED** that the Government's Objection to Judge Macdonald's Report and Recommendation (Doc. 31) is **overruled**.

**IT IS FURTHER ORDERED** that Judge Macdonald's Report and Recommendation (Doc. 30) is **accepted and adopted in full**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. 20) is **granted**.

**IT IS FURTHER ORDERED** that the indictment in the above-captioned case against Defendant Francisco Munoz Lutz (Doc. 14) is **dismissed with prejudice**.

Dated this 8th day of November, 2019.

_____
Honorable Rosemary Márquez
United States District Judge